UNCLASSIFIED//FOR PUBLIC RELEASE

SECRET

[NOT YET SCHEDULED FOR ORAL ARGUMENT]

Nos. 16-5011, 16-5012

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

JIHAD DHIAB, Detainee, Guantanamo Bay Naval Station; SHAKER AAMER, as Next Friend of Jihad Dhiab,

Petitioners-Appellees,

v.

BARACK OBAMA, President of the United States; ASHTON B. CARTER, Secretary, United States Department of Defense; PETER J. CLARKE, Navy Rear Admiral, Commander, Joint Task Force-GTMO; DAVID E. HEATH, Army Colonel, Commander, Joint Detention, Operations Group, JTF-GTMO,

Respondents-Appellants/Cross-Appellees,

HEARST CORPORATION; ABC, INC.; ASSOCIATED PRESS; BLOOMBERG L.P.; CBS BROADCASTING, INC.; THE CONTENTLY FOUNDATION; DOW JONES & COMPANY, INC.; FIRST LOOK MEDIA, INC.; GUARDIAN US; MCCLATCHY COMPANY; NATIONAL PUBLIC RADIO INC.; NEW YORK TIMES COMPANY; REUTERS AMERICA LLC; TRIBUNE PUBLISHING COMPANY; USA TODAY; WASHINGTON POST,

Intervenors-Appellees/Cross-Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

# OPENING BRIEF FOR RESPONDENTS-APPELLANTS/CROSS-APPELLEES

BENJAMIN C. MIZER
*Principal Deputy Assistant Attorney General*

CHANNING D. PHILLIPS
*United States Attorney*

MATTHEW M. COLLETTE
CATHERINE H. DORSEY
*(202) 514-3469*
*Attorneys, Appellate Staff*
*Civil Division, Room 7236*
*U.S. Department of Justice*
*950 Pennsylvania Ave., N.W.*
*Washington, D.C. 20530-0001*




UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

A. Parties and Amici.

Jihad Dhiab was petitioner in the district court and is appellee in this Court. Shaker Aamer appeared as next friend of Jihad Dhiab in district court.

Barack Obama, President of the United States; Ashton B. Carter, Secretary, United States Department of Defense; Peter J. Clarke, Navy Rear Admiral, Commander, Joint Task Force-GTMO; and David E. Heath, Army Colonel, Commander, Joint Detention, Operations Group, JTF-GTMO, were respondents in the district court and are appellants/cross-appellees in this Court.[1]

[1] Richard W. Butler, former Commander, Joint Task Force-GTMO and John Bogdan, former Commander, Joint Detention, Operations Group, JTF-GTMO were the named respondents in the district court. Per Federal Rule of Appellate Procedure 43(c)(2), they have been automatically substituted on appeal by their successors in office.





UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
SECRET

Hearst Corporation; ABC, Inc.; Associated Press; Bloomberg L.P.; CBS Broadcasting, Inc.; The Contently Foundation; Dow Jones & Company, Inc.; First Look Media, Inc.; Guardian US; McClatchy Company; National Public Radio Inc.; New York Times Company; Reuters America LLC; Tribune Publishing Company; USA Today; and Washington Post were intervenors in the district court and are appellees/cross-appellants in this Court. There were no amici in the district court.

B. Rulings Under Review.

Respondents-appellants appeal (No. 16-5011) from the district court's orders (Kessler, D.J.) of October 3, 2014 (App. 166-67); October 27, 2015 (App. 268); and December 22, 2015 (App. 278-79), requiring that the classified forced cell extraction videos redacted by the Government in accordance with the court's order be unsealed. The opinion underlying the October 3, 2014 order is published at 70 F. Supp. 3d at 486. *See also* App. 168-96. The opinions supporting the October 27, 2015 and December 22, 2015 orders are not yet published, but are available, respectively, at 2015 WL 6501509 and 2015 WL 9412104. *See also* App. 269-77, 290-95.






UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
~~SECRET~~

Intervenors-appellees cross-appeal (No. 16-5012) from the district court's orders (Kessler, D.J.) of October 3, 2014 and December 22, 2015, permitting the Government's redactions of certain audio contained on the videos and denying intervenors-appellees' motion to compel production of the videos without such audio redactions.

C. <u>Related Cases</u>.

This case has previously been before this Court. The Government previously filed an appeal (No. 14-5299) challenging the district court's order of October 3, 2014, which required the Government to publicly release videos of petitioner's forced cell extractions once certain redactions were made. *See generally Dhiab* v. *Obama*, 787 F.3d 563 (D.C. Cir. 2015) (per curiam). This Court dismissed the appeal for lack of appellate jurisdiction. *Id.* at 565, 567-68.

In addition, petitioner filed an appeal (No. 14-5276) from the district court's opinion and order of November 7, 2014, denying petitioner's application for a preliminary injunction. This Court dismissed petitioner's


~~SECRET~~
UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

~~SECRET~~

appeal as moot in light of his transfer from Guantanamo Bay out of United States custody.

This case was also before this Court (Nos. 13-5223, 13-5276, 13-5224, 13-5225) on the issue of whether the district court could exercise jurisdiction over petitioner's underlying habeas action. *See Aamer* v. *Obama*, 742 F.3d 1023 (D.C. Cir. 2014) (holding that district court has jurisdiction over habeas actions, including petitioner's, challenging certain conditions of confinement).

Counsel is not aware of any other related cases within the meaning of Circuit Rule 28(a)(1)(C).

s/ Catherine H. Dorsey
CATHERINE H. DORSEY



~~SECRET~~

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



## TABLE OF CONTENTS

Page

Certificate as to Parties, Rulings, and Related Cases

Table of Authorities ........ iv

Glossary ........ x

Introduction ........ 1

Statement of Jurisdiction ........ 3

Statement of the Issue ........ 5

Pertinent Statutes and Regulations ........ 5

Statement of the Case ........ 6

A. Factual Background And Prior Proceedings ........ 8

1. Dhiab's Preliminary Injunction Motion ........ 8

2. Motion to Intervene and Unseal Videos ........ 9

B. The District Court's Initial Opinion and Order Unsealing the Videos ........ 11

C. The Government's Stay Motion and the First Appeal ........ 14

1. The Government's Motion for a Stay Pending Appeal ... 14

2. The Government's Supplemental Declarations in Support of a Stay Pending Appeal ........ 15

3. This Court's Dismissal of the Government's First Appeal ........ 20





UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

SECRET


D. The District Court's Denial of Reconsideration and New Disclosure Order ..... 21

Summary of Argument ..... 26

Standard of Review ..... 30

Argument ..... 30

The District Court Erred in Ordering Public Release of The Classified Government Videos, the Release of Which Is Reasonably Likely to Cause Serious Damage to National Security ... 30

A. The District Court Erred in Concluding That the Public Has a First Amendment Right of Access to Classified Material in Civil Litigation. ..... 30

1. The *Press-Enterprise* Standard Applicable to the Sealing of Unclassified Judicial Records Has No Application to Review of Executive Classification Decisions. ..... 30

2. Even if the District Court Were Correct That *Press-Enterprise* is Applicable, No First Amendment Right Attaches Here. ..... 44

a. There Is No History of Public Access to Classified Information Filed in Habeas Proceedings ..... 45

b. Public Access to Classified Information Would Not Play a Significant Positive Role in These Proceedings. ..... 51

B. Even Assuming a Limited First Amendment Right of Access Applied Here, the Government Demonstrated That Closure Was Necessary to Protect National Security, Even After the Videos Were Redacted. ..... 54






UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

SECRET


1. The Videos Can Be Used to Incite Violence Against U.S. Personnel and Interests ........ 56

2. The Videos Could Be Used to Develop Countermeasures, Endangering Guantanamo Security. ........ 61

3. Release of the Videos May Increase the Need for More Cell Extractions, Endangering Security at Guantanamo. ........ 68

4. Release of the Videos Would Risk Dilution of Protections Afforded U.S. Personnel in other Contexts. ........ 70

Conclusion ........ 73

Certificate of Compliance with Federal Rule of Appellate Procedure 32(a)

Certificate of Service

Addendum: Exec. Order No. 13,526







UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

SECRET

## TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Aamer* v. *Obama*,
742 F.3d 1023 (D.C. Cir. 2014) .......... 3

*ACLU* v. *U.S. Dep't of Def.*,
628 F.3d 612 (D.C. Cir. 2011) .......... 39

*Al-Haramain Islamic Foundation, Inc.* v. *Bush*,
451 F. Supp. 2d 1215 (D. Or. 2006) .......... 48

*Ameziane* v. *Obama*,
699 F.3d 488 (D.C. Cir. 2012) .......... 4, 5, 42, 43

*Bismullah* v. *Gates*,
501 F.3d 178 (D.C. Cir. 2007),
*judgment vacated*, 554 U.S. 913 (2008),
*and on reconsideration*, 551 F.3d 1068 (D.C. Cir. 2009) .......... 32, 42, 43, 48, 49

*Brown* v. *Louisiana*,
383 U.S. 131 (1966) .......... 59

*Campbell* v. *U.S. Dep't of Justice*,
164 F.3d 20 (D.C. Cir. 1998) .......... 34

*Center for Constitutional Rights* v. *CIA*,
765 F.3d 161 (2d Cir. 2014) .......... 34, 56, 60

*Center for Int'l Envtl. Law* v. *Office of the U.S. Trade Representative*,
718 F.3d 899 (D.C. Cir. 2013) .......... 30

* Authorities chiefly relied upon are marked with an asterisk






UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
~~SECRET~~

*Center for Nat'l Sec. Studies* v. *U.S. Dep't of Justice*,
331 F.3d 918 (D.C. Cir. 2003) ........ 38, 44

*CIA* v. *Sims*,
471 U.S. 159 (1985) ........ 33

*Department of the Navy* v. *Egan*,
484 U.S. 518 (1988) ........ 31, 32, 33, 38, 55

**Dhiab* v. *Obama*,
787 F.3d 563 (D.C. Cir. 2015) ........ 3, 4, 7, 20, 21, 71, 72

*El-Masri* v. *United States*,
479 F.3d 296 (4th Cir. 2007) ........ 32, 38, 55

*Fitzgibbon* v. *CIA*,
911 F.2d 755 (D.C. Cir. 1990) ........ 55

*Halperin* v. *CIA*,
629 F.2d 144 (D.C. Cir. 1980) ........ 63

*Holy Land Found. for Relief & Dev.* v. *Ashcroft*,
333 F.3d 156 (D.C. Cir. 2003) ........ 49

*Houchins* v. *KQED, Inc.*,
438 U.S. 1 (1978) ........ 30, 37

*In re Application of New York Times Co. to Unseal Wiretap & Search Warrant Materials*,
577 F.3d 401 (2d Cir. 2009) ........ 47

* Authorities chiefly relied upon are marked with an asterisk





UNCLASSIFIED//FOR PUBLIC RELEASE

SECRET

*In re Copley Press, Inc.*,
518 F.3d 1022 (9th Cir. 2008) .......... 4

*In re Guantanamo Bay Detainee Litigation:*
577 F. Supp. 2d 143 (D.D.C. 2008) .......... 9
624 F. Supp. 2d 27 (D.D.C. 2009) .......... 46, 47, 51, 52

*In re Motion for Release of Court Records*,
526 F. Supp. 2d 484 (F.I.S.C. 2007) .......... 48

*In re Papandreou*,
139 F.3d 247 (D.C. Cir. 1998) .......... 5

*In re Washington Post Co.*,
807 F.2d 383 (4th Cir. 1986) .......... 42, 43, 45, 51

**Int'l Counsel Bureau* v. *U.S. Dep't of Def.*,
906 F. Supp. 2d 1 (D.D.C. 2012) .......... 33, 34, 39, 41, 60, 67, 70, 71

*Jifry* v. *FAA*,
370 F.3d 1174 (D.C. Cir. 2004) .......... 49

**Judicial Watch, Inc.* v. *U.S. Dep't of Def.*,
715 F.3d 937 (D.C. Cir. 2013) .......... 36, 60

*McBurney* v. *Young*,
133 S. Ct. 1709 (2013) .......... 37

**McGehee* v. *Casey*,
718 F.2d 1137 (D.C. Cir. 1983) .......... 31, 32, 37, 38, 56, 69

* Authorities chiefly relied upon are marked with an asterisk





UNCLASSIFIED//FOR PUBLIC RELEASE

SECRET


*Morley* v. *CIA*,
508 F.3d 1108 (D.C. Cir. 2007) .......... 33

*North Jersey Media Grp., Inc.* v. *Ashcroft*,
308 F.3d 198 (3d Cir. 2002) .......... 38, 51, 69

*Northrop Corp.* v. *McDonnell Douglas Corp.*,
751 F.2d 395 (D.C. Cir. 1984) .......... 48

*Obaydullah* v. *Obama*,
609 F.3d 444 (D.C. Cir. 2010) .......... 4

*Parhat* v. *Gates*,
532 F.3d 834 (D.C. Cir. 2008) .......... 42

*People's Mojahedin Org. of Iran* v. *Dep't of State*,
327 F.3d 1238 (D.C. Cir. 2003) .......... 49

*Press-Enterprise Co.* v. *Superior Court*,
478 U.S. 1 (1986) .......... 11, 12, 27, 35, 44, 45, 51, 54

*SEC* v. *Am. Int'l. Grp.*,
712 F.3d 1 (D.C. Cir. 2013) .......... 47, 53

*Snepp* v. *United States*,
444 U.S. 507 (1980) .......... 54

*Stillman* v. *CIA*,
319 F.3d 546 (D.C. Cir. 2003) .......... 31, 39

*Times Mirror Co.* v. *United States*,
873 F.2d 1210 (9th Cir. 1989) .......... 45


* Authorities chiefly relied upon are marked with an asterisk





UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

SECRET

*United States* v. *Abu Marzook*,
412 F. Supp. 2d 913 (N.D. Ill. 2013) .......... 48

**United States* v. *El-Sayegh*,
131 F.3d 158 (D.C. Cir. 1997) .......... 30, 45, 46, 53

*United States* v. *Moussaoui*,
65 F. App'x 881 (4th Cir. 2003) .......... 44, 54

*United States* v. *Poindexter*,
732 F. Supp. 165 (D.D.C. 1990) .......... 46, 48, 49

*United States* v. *Smith*,
750 F.2d 1215 (4th Cir. 1984) .......... 32

*United States* v. *Wolfson*,
55 F.3d 58 (2d Cir. 1995) .......... 45

*Washington Post* v. *Robinson*,
935 F.2d 282 (D.C. Cir. 1991) .......... 45

*Wolf* v. *CIA*,
473 F.3d 370 (D.C. Cir. 2007) .......... 67

*Zander* v. *DOJ*,
885 F. Supp. 2d 1 (D.D.C. 2012) .......... 64

**Statutes:**

Classified Information Procedures Act, 18 U.S.C. app. 3 .......... 49

* Authorities chiefly relied upon are marked with an asterisk





UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



5 U.S.C. § 552(a)(4)(B) .......... 39

5 U.S.C. § 552(b)(1) .......... 39

28 U.S.C. § 1291 .......... 4

28 U.S.C. § 2241 .......... 3

**Rule:**

Fed. R. App. P. 4(a)(1)(B) .......... 4

**Order:**

*Exec. Order No. 13, 526, 75 Fed. Reg. 707 (Dec. 29, 2009) .......... 5, 6, 36

**Legislative Material:**

*Guantanamo Detention Facility and the Future of U.S. Detention Policy: Hearing Before S. Comm. on Armed Services*, 114th Cong. (2015) .......... 56

* Authorities chiefly relied upon are marked with an asterisk





UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



## GLOSSARY

App. .......... Public, Unclassified Appendix

Class. App. .......... Classified Supplemental Appendix

FCE .......... Forced Cell Extraction

FOIA .......... Freedom of Information Act

ISIL .......... Islamic State of Iraq and the Levant

ISIS .......... Islamic State of Iraq and Syria

JTF-GTMO .......... Joint Task Force–Guantanamo





UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



## INTRODUCTION

The district court here, for the first time in the history of the Guantanamo detainee litigation, ordered public disclosure of classified information over the Government's objection. At issue in this proceeding is the disclosure of classified videos that depict petitioner Jihad Dhiab, a former Guantanamo detainee, being involuntarily removed from his cell and/or fed enterally. The district court ordered the Government to produce thirty-two such videos to Dhiab's security-cleared counsel in discovery, and Dhiab's counsel filed them under seal in his habeas case. The district court then ordered, at the request of members of the media who intervened in this habeas proceeding, that those videos be publicly released, subject only to limited redactions for "all identifiers of individuals in the video[s] (*i.e.*, faces other than Mr. Dhiab's, voices, names, etc.)." App. 167. Once the Government redacted a subset of the videos, the district court ordered that those videos, which remain classified, be unsealed.

The district court never addressed whether the videos were properly classified under an appropriate deferential standard of review; indeed, the



UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

SECRET

court expressly distinguished that familiar standard under which the government may withhold information that is "properly classified" as insufficiently lenient. Rather, the district court held that even properly classified information, once submitted to a court in litigation, becomes subject to an asserted First Amendment right of access to judicial proceedings and can only be withheld if the Government carries a "heavy burden" to justify its protection. The district court then rejected the considered judgment of top-ranking military officers, who have extensive knowledge of both the dangers faced by U.S. personnel here and abroad and the conditions at Guantanamo, and made its own judgment that release of the videos would not cause damage to national security.

The district court's order is wrong as a matter of law. The First Amendment does not grant the public a right of access to properly classified government documents. And even if it did, the district court erred in substituting its own judgment for the expert judgment of military officers. Its judgment should be reversed.





UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
SECRET

## STATEMENT OF JURISDICTION

The district court exercised jurisdiction over Dhiab's habeas action pursuant to 28 U.S.C. § 2241. *See Aamer* v. *Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014). On October 3, 2014, the district court ordered thirty-two cell extraction videos publicly disclosed once the Government both redacted identifying information of Guantanamo personnel and submitted a joint proposal regarding disclosure of the videos. This Court dismissed the Government's appeal from that order as premature, noting that the Government could "appeal anew if the district court finally orders the videotapes unsealed and released." *Dhiab* v. *Obama*, 787 F.3d 563, 568 (D.C. Cir. 2015).

The Government redacted ten videos, selected through discussions amongst the parties and the district court,[2] and, on December 22, 2015, the court entered a final order, requiring those redacted videos to be unsealed

---

[2] Eight of the videos are a subset of the thirty-two videos produced in the litigation and introduced into evidence during the preliminary injunction hearing; two are compilation videos created by counsel and played during the preliminary injunction hearing.



UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

SECRET

on January 11, 2016.[3] App. 279. The district court subsequently granted a stay of that order pending any appeal. App. 296. The Government filed a timely notice of appeal on January 21, 2016. *See* Fed. R. App. P. 4(a)(1)(B); App. 297.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291, under the collateral order doctrine, to review the district court's decision to unseal the ten redacted, classified videos. *See Dhiab*, 787 F.3d at 566-67, 568; *Ameziane* v. *Obama*, 699 F.3d 488, 493 (D.C. Cir. 2012); *Obaydullah* v. *Obama*, 609 F.3d 444, 447 (D.C. Cir. 2010).

The district court's order conclusively requires that the classified information the Government seeks to protect be made public. *See In re Copley Press, Inc.*, 518 F.3d 1022, 1025 (9th Cir. 2008); *cf. Dhiab*, 787 F.3d at 566 (rejecting jurisdiction over prior appeal because court's disclosure order was not final). The order, which is premised on the determination that the intervenors have a First Amendment right of access, is also

[3] The district court's original order required the videos to be unsealed on January 10, 2016 (a Sunday), but the district court has since clarified that it meant January 11, 2016. App. 296.





UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
SECRET

completely separate from either the merits of Dhiab's underlying habeas action and/or the merits of the preliminary injunction motion, which are now moot in light of Dhiab's transfer out of United States custody. *See Ameziane*, 699 F.3d at 493-94. And, if no appeal is taken at this time, the issue of whether the videos may be unsealed will be moot, and therefore effectively unreviewable, because the videos will have already been disclosed pursuant to the court's order. *See In re Papandreou*, 139 F.3d 247, 251 (D.C. Cir. 1998).

## STATEMENT OF THE ISSUE

Whether the district court erred in ordering the public disclosure of redacted, classified videos despite the Government's determination that such disclosure is reasonably expected to cause serious damage to national security.

## PERTINENT STATUTES AND REGULATIONS

The Executive Order governing classification of national security information (Exec. Order No. 13,526) is included in an addendum to this brief.



UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



## STATEMENT OF THE CASE

Petitioner Dhiab was formerly detained at Guantanamo Bay. (In December 2014, Dhiab was released from Guantanamo and transferred to the control of the Government of Uruguay. App. 235.) In the context of his now moot habeas action, Dhiab, who was then on a long-term hunger strike, moved for a preliminary injunction to prohibit the Government from feeding him enterally and from performing forced cell extractions ("FCEs") for the purpose of moving him to administer an enteral feeding. In considering that motion, the court ordered the Government to produce to Dhiab's counsel (who had been granted a security clearance to pursue the habeas litigation) thirty-two videos, classified as "SECRET." *See* Exec. Order No. 13,526, § 1.2, 75 Fed. Reg. 707, 707-08 (2009) ("SECRET" classification applies to information whose unauthorized disclosure "reasonably could be expected" to cause "serious damage" to national security). These videos were made for the purpose of training Guantanamo security personnel, and showed forced cell extractions conducted on Dhiab before or after enteral feeding and some aspects of





UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
SECRET

Dhiab's enteral feeding process. Dhiab's counsel filed those videos under seal with the district court.

Members of the news media intervened in the district court to have the videos publicly released, even though they were (and remain) classified. Over the Government's opposition, the district court ordered the Government to publicly disclose the videos, subject to certain limited redactions for "all identifiers of individuals in the video[s] (i.e., faces other than Mr. Dhiab's, voices, names, etc.)." App. 167.

The Government appealed, but this Court dismissed the appeal for lack of interlocutory appellate jurisdiction, concluding that the disclosure order was not final. *Dhiab*, 787 F.3d at 566-67. In returning the case to the district court, this Court encouraged the district court to consider the Government's supplemental declarations supporting withholding of the videos, noting that those declarations "set out the harm associated with release of the videotapes in considerably more detail than the declarations the government submitted in opposition to the initial motion." *Id.* at 567.



SECRET
UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
SECRET

On remand, the Government moved for reconsideration of the district court's original disclosure order, supplemented by further declarations from high-ranking military officers that explained in greater detail the serious damage to national security that could result from public release of the videos. The district court denied the motion.

After the Government, with the Court's authorization, redacted ten of the videos, the district court ordered that those ten redacted videos be publicly released by January 11, 2016. App. 279, 296. The Government has now appealed again. The district court has stayed its disclosure order pending appeal. App. 296.

## A. FACTUAL BACKGROUND AND PRIOR PROCEEDINGS

### 1. Dhiab's Preliminary Injunction Motion

In the context of Dhiab's petition for habeas corpus, he (along with other detainees) filed a motion to enjoin the Government from continuing to feed him enterally. In litigating that motion, the Government disclosed that it had video recordings, classified as "SECRET," documenting Dhiab's enteral feedings and/or cell extractions. Dhiab moved to compel






UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



production of the videos, and the court ordered the Government to produce thirty-two of them to Dhiab's security-cleared counsel. App. 111, 125.

Dhiab's counsel then filed those classified videos under seal with the district court, in accordance with the protective order governing Guantanamo habeas proceedings. *See In re Guantanamo Bay Detainee Litigation*, 577 F. Supp. 2d 143, 154 (D.D.C. 2008).

**2. Motion to Intervene and Unseal Videos**

Various news organizations moved to intervene in Dhiab's habeas proceeding and to unseal the videos. Dhiab did not oppose.

The Government did not oppose intervention, but did oppose the motion to unseal the videos. The Government argued that there was no authority for forcing public disclosure of classified information as part of this habeas case. The Government further argued that, even if there could be a First Amendment right of access to classified information, disclosure of the videos would nevertheless be inappropriate here because it would cause serious damage to important national security interests.





UNCLASSIFIED//FOR PUBLIC RELEASE



In support of its argument, the Government filed a declaration by Rear Admiral Richard Butler, then Commander of Joint Task Force-Guantanamo ("JTF-GTMO"). App. 137-52. That declaration identified serious harms reasonably expected to result from disclosure of the videos, and which justify the "SECRET" classification.

- The videos could be used as propaganda to increase anti-American sentiment overseas, thereby endangering United States personnel, including service members. App. 144-45.
- Disclosure would pose a risk to military personnel because it would enable detainees or others to develop countermeasures to cell extraction tactics, techniques, and procedures. App. 140.
- Release of the videos might encourage other detainees to refuse required movements to prompt more cell extractions, which would increase the risk of injury to both detainees and military personnel. App. 142-43.
- Release of the videos would be contrary to the Government's policy (consistent with the principles of the Geneva





UNCLASSIFIED//FOR PUBLIC RELEASE
SECRET

Conventions) of protecting detainees from public curiosity, and could dilute protections for U.S. military personnel being held by our enemies in analogous circumstances. JA 143, 145-46.

Finally, the Government noted that, apart from their classification, the videos included sensitive (but not classified) information, such as personally identifying information about military personnel, which should not be publicly released. App. 149-51.

## B. The District Court's Initial Opinion and Order Unsealing the Videos

The district court granted the motion to unseal the videos. App. 166-67, 168-96. In so doing, the district court acknowledged that no court before had ordered public disclosure of classified information over the Government's objection in the Guantanamo habeas litigation. App. 178.

The district court applied the two-step "experience and logic" test of *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 9 (1986), a case governing public access to *unclassified* criminal trial records, to conclude that intervenors have a First Amendment right of access to the classified videos




UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



here. App. 179-80. The court dismissed the notion that a different standard governs public access to *classified* information. App. 181.

As a result, the district court did not address the question whether the videos had been properly classified, which it deemed irrelevant. App. 181, 183. Instead, the court held that, pursuant to *Press-Enterprise*, the videos must be disclosed unless the Government could demonstrate a "substantial probability of harm" to an "overriding interest." App. 183 (quoting *Press-Enterprise*, 478 U.S. at 14).

The district court then concluded that the Government had not made such a showing. First, the district court rejected as legally insufficient the Government's asserted harm that the videos could be used by terrorists as propaganda. The court did not dispute the Government's assessment that the videos "would prove useful as propaganda" to incite violence against U.S. citizens and military personnel, but characterized that concern as permitting a "heckler's veto" over speech. App. 192-93.

The district court also rejected the Government's conclusion that release of the videos would enable detainees and other enemies to develop





UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
SECRET

countermeasures to forced cell extractions and enteral feedings. Despite the Government's declaration that the precise classified information at issue in the videos has never been publicly released, App. 139, 151, the court reasoned that the Government failed to show a "substantial probability" of harm due to detainees' presumed familiarity with, and available public information regarding, these procedures, App. 186-88.

The court further rejected as speculative the Government's assertion that release of the videos might result in more cell extractions, on the ground that only Dhiab's cell extraction videos would be released. App. 194. The court, therefore, did not address the Government's concern that the release of Dhiab's cell extraction videos will encourage other detainees to act disruptively in the hope that videos of their cell extractions will also be released.

The only asserted harm that the district court credited was that from releasing sensitive, but unclassified, identifying information. The court thus stated that the Government could make limited redactions to the videos to protect the identities of individuals other than Dhiab, such as by


SECRET
UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



screening out names and voices, blurring faces, and blacking out materials (such as rosters) that might be visible on the videos. App. 167, 196.

The district court subsequently ordered the intervenors and the Government, once the redactions were completed, to submit a joint proposal "regarding how the videotapes can be made available to the public most efficiently." App. 197-98.

### C. THE GOVERNMENT'S STAY MOTION AND THE FIRST APPEAL

#### 1. The Government's Motion for a Stay Pending Appeal

The Government sought a stay pending a potential appeal. *See* Respondents' Mot. to Stay Order Unsealing Classified Videos Pending Possible Appeal and Request for an Administrative Stay, No. 05-cv-1457, Docket No. 356 (D.D.C. Oct. 15, 2014). In its stay motion, the Government explained that the district court erred in making its own judgment as to the anticipated harms stemming from disclosure of the videos and in concluding that the very same information in the videos had already been publicly released. On the latter point, the Government's motion was supported by a declaration from Rear Admiral Kyle J. Cozad, who replaced





UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
SECRET

Rear Admiral Butler as Commander of JTF-GTMO. He explained that "DoD has never released the level of detail regarding FCEs and enteral feedings as is contained within these videotapes." App. 209.

The district court granted a temporary stay of its disclosure order. App. 211-12. After an evidentiary hearing, the district court (without referring to the videos in its opinion) denied Dhiab's preliminary injunction motion regarding enteral feeding.[4]

**2. The Government's Supplemental Declarations in Support of a Stay Pending Appeal**

The Government appealed and the district court extended the stay pending final resolution of the appeal. In support of its stay motion, the Government included two classified declarations elaborating on the serious damage which could reasonably be expected to flow from public disclosure of the videos.

The first declaration, by Rear Admiral Sinclair M. Harris, then Vice Director of Operations for the Joint Chiefs of Staff, explained that the

[4] Dhiab appealed (D.C. Cir. No. 14-5276) the denial of his preliminary injunction. In light of his transfer from Guantanamo Bay, his appeal was dismissed as moot.



UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
SECRET

forced cell extraction videos, if released, could lead to violence against U.S. personnel. He noted that the release of "certain provocative photographs and information" in other contexts had caused harm to national security, including the deaths of U.S. military personnel. App. 214-15. Based on those prior releases, which led to "hostile and violent reactions," Rear Admiral Harris stated that the release of the videos "is likely to further endanger U.S. military and civilian personnel who continue to operate in various locations in the Central Command (CENTCOM) region, such as Afghanistan and Iraq." App. 218.

Rear Admiral Harris further explained that the risk of harm from such a release is "heightened now, at a time when numerous groups continue in their efforts to attack U.S. personnel and interests both abroad and within the continental United States," and that release of the cell extraction videos could be used as propaganda by these groups to encourage further attacks. App. 215-16 (citing ISIL's efforts to encourage attacks against the United States as well as ISIL's attacks on our allies). He noted that ISIL, in particular, has already demonstrated an interest in using



UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



imagery associated with Guantanamo Bay to "encourage its supporters," and forced cell extraction videos would provide further fodder. App. 216 (describing ISIL's use of orange jumpsuit—a symbol associated with Guantanamo—in its beheadings). He also explained that Al Qaeda would also likely use the cell extraction videos "to facilitate anti-US sentiment," as Al Qaeda continues to use Guantanamo as a topic to encourage followers to take action. App. 217-18.

The second declaration, by Rear Admiral Cozad, explained that cell extraction videos are designed as a training tool for the Guantanamo guard force, and show in detail how cell extractions are conducted, including the number of personnel involved, how each individual is positioned, what protective equipment is used by each team member, and which members of the team hold the keys for the restraints. Class. App. 17, 20-22. A detainee subject to a cell extraction, based both on the positioning of the detainee and the Guantanamo personnel, as well as how quickly the cell extraction occurs, would be unable to observe all these details. Class. App. 17-18.





UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
SECRET

Rear Admiral Cozad concluded that access to information on the videos "would help detainees determine a way to evade being secured by the restraints, to surreptitiously grab the keys during the process, or to otherwise attempt to thwart securing of the restraints with the keys." Class. App. 21. Moreover, because a sizeable number of cell extraction videos are involved here (ten videos have already been ordered released; twenty-four videos remain at issue in the district court), detainees would be able to identify patterns and mistakes from either watching the videos or having their contents described to them. Class. App. 22-23. All of this information would facilitate the detainees' ability to develop countermeasures. Class. App. 22.

In addition, Rear Admiral Cozad explained that release of the cell extraction videos would permit detainees to develop measures to compromise security during the enteral feeding process or the enteral feeding process itself. App. 227. For example, "[d]etainees could use information on the FCE videos, either observed or conveyed to them by others, to determine [a] guard's positioning and exploit any reduction or



UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
SECRET

vulnerability in security level" at specific points in the feeding process, "putting guards and medical personnel at risk." Class. App. 23.

Release of the cell extraction videos "will also likely lead to an increase in the number of FCEs, thereby straining JTF-GTMO guard staff resources and placing guards at greater risk of harm." App. 229. "The detainees generally believe that their actions recorded on video tape have the potential to reach a broader audience than the JTF-GTMO staff." Class. App. 25. There is a serious concern that the detainees will resist guard requests in order to force a cell extraction, so that their actions and/or words will be recorded and potentially communicated to a larger audience. Class. App. 25-26. "This potential increase in FCEs would place a significant burden on the guard force and unnecessarily expose them to greater threats to their safety." App. 230.



Class. App. 27.





SECRET
UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE





Class. App. 27.

Class. App. 27.

3. **This Court's Dismissal of the Government's First Appeal**

This Court dismissed the Government's appeal for lack of jurisdiction, concluding that the district court's unsealing order was not a final appealable order. *Dhiab*, 787 F.3d at 566-67. The Court noted that a remand may have "salutary effects," including giving the district court "an opportunity to consider the supplemental declarations that the government submitted in support of its motion for a stay." *Id.* at 567. Those declarations, the Court acknowledged, "set out the harm associated with release of the videotapes in considerably more detail than the declarations the government submitted in opposition to the initial motion." *Id.*





UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
SECRET

This Court also declined to exercise mandamus jurisdiction based on its conclusion that the Government could "appeal anew if the district court finally orders the videotapes unsealed and released." *Dhiab*, 787 F.3d at 568.

D. THE DISTRICT COURT'S DENIAL OF RECONSIDERATION AND NEW DISCLOSURE ORDER

On remand, the district court issued a new order requiring the Government to redact and produce ten classified cell extraction videos. App. 279.[5] While the redaction process was underway, the Government moved for reconsideration of the district court's original unsealing order, reiterating the legal arguments made on appeal. The motion was supported by the Cozad and Harris declarations, described above, that the district court did not have an opportunity to consider previously, and which this Court described as providing "considerably more detail" than the earlier declarations, *Dhiab*, 787 F.3d at 567. In addition, the

[5] As part of the discussions amongst the parties and the district court that led to the plan to redact the ten videos ordered disclosed by the district court, the Government agreed to continue the redaction process for the remaining twenty-four videos in the event their disclosure is at some point finally ordered.



UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
SECRET

Government supplemented its motion with two new classified declarations.

The first declaration, by Rear Admiral Andrew L. Lewis, who replaced Rear Admiral Harris as the Vice Director of Operations for the Joint Staff at the Pentagon, concluded after reviewing a sample of the redacted videos that public release of the redacted videos could reasonably be expected to seriously harm national security because the redacted videos could be used by extremist groups such as ISIL and Al Qaeda to incite violence, just like the unredacted videos. App. 263-65.

More specifically, as Rear Admiral Lewis explained, the redacted videos depict "Mr. Dhiab's forcible interaction with JTF-GTMO personnel, the application and removal of security restraints by the JTF-GTMO guard force, and the enteral feeding process." Class. App. 35-36. Rear Admiral Lewis concluded that "[e]xtremist groups would likely use portions of the redacted FCE videos, such as the unredacted imagery and audio of Mr. Dhiab, to further encourage supporters and followers to attack U.S. military and government personnel." App. 265. He further stated that



SECRET
UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



"such groups are likely to motivate their supporters by manipulating and misrepresenting the treatment of Mr. Dhiab depicted on the redacted videos, similar to the way hostile groups encouraged the violence that resulted from public release of other information, videos, and photographs described in Rear Admiral Harris' prior declaration." *Id.* In his opinion, release could place the lives of [redacted] U.S. personnel serving in Afghanistan and Iraq at risk. App. 267.

Rear Admiral Lewis explained that the concern about release of the videos remains heightened because numerous groups are intent on attacking U.S. personnel and interests. App. 265. For example, on September 11, 2015, ISIL released a propaganda video "threatening to repeat the attacks of September 11, 2001," which "merged together imagery of the September 11 attacks with imagery of ISIL's practice of beheading its victims." App. 266. Rear Admiral Lewis noted that "[t]he imagery and audio on the redacted FCE videos . . . would be especially useful to a group like ISIL which utilizes social media particularly effectively to incite violence, motivate supporters, and obtain new recruits." *Id.*



SECRET

UNCLASSIFIED//FOR PUBLIC RELEASE

The second declaration, by then Commander of JTF-GTMO, Brigadier General Jose R. Monteagudo, explains that, based on his review of a sampling of the redacted videos and consultation with a member of his staff, who reviewed eight of the redacted cell-extraction videos in full, public release of the redacted videos could reasonably be expected to cause serious damage to national security by revealing sensitive information about how JTF-GTMO conducts cell extractions and enteral feedings. App. 258-59.

As Brigadier General Monteagudo further explained, the redacted cell extraction videos "still depict detailed imagery and audio" of both the cell extractions and enteral feeding process. Class. App. 31. The redacted videos, therefore, "disclose detailed information about the actions of the guard force" during those procedures, including "the number and positioning of the guards; the protective equipment used by each team member; which members of the team hold the security equipment, such as keys and restraints; how security equipment is applied and removed; how security equipment is passed between team members; [redacted]

UNCLASSIFIED//FOR PUBLIC RELEASE



The district court denied the Government's reconsideration motion. The court did not quarrel with the Government's point that no court had ever ordered public release of classified information in the Guantanamo habeas litigation, but countered by stating that no court has ever "*refused* to allow" such public disclosure. App. 273 (emphasis in original). The court acknowledge that another court had declined to order release of forced cell extraction videos in a FOIA case, but distinguished that case on the ground that "FOIA provides the Government with a significantly more lenient standard for denying release" than the First Amendment. *Id.*

The district court also rejected the Government's argument that deference is owed to the Executive Branch's classification determinations, stating that "the Government is really saying [] that its classification system trumps the decisions of the federal courts." App. 274. Finally, the district court dismissed the Lewis and Monteagudo declarations as "repetitive,





UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



speculative, and extremely vague." *Id.* The district court also discounted the Cozad and Harris declarations as offering "little, if any, additional factual support." App. 275.

On December 22, 2015, the district court approved the Government's redactions of the ten videos as consistent with its previous orders (and rejected Dhiab's arguments for lesser redactions), but ordered that the redacted videos be unsealed no later than January 11, 2016. App. 278-79, 296.

## SUMMARY OF ARGUMENT

The district court here ordered the public disclosure of ten classified videos over the Government's objection and despite the Government's detailed declarations identifying serious damage to national security that is reasonably expected to result from disclosure of the videos. There is no authority that supports the district court's action. To the contrary, the district court's ruling is inconsistent with the Executive Branch's constitutional authority to determine what national security information is



SECRET

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



appropriately classified—a judgment that courts may review in appropriate contexts, but only with great deference.

The district court erred in holding that a First Amendment right of access to judicial records applies to classified information submitted by the Government to a court in the Guantanamo habeas litigation. In certain contexts, courts review whether the Government has made a logical and plausible showing that withheld information is properly classified. Here the district court declined to review the classification decision at all, expressly rejecting the familiar deferential standard applied in Freedom of Information Act (FOIA) and pre-publication review cases in which the Government must show only that the information is "properly classified."

Instead, the district court improperly applied the Supreme Court's ruling in *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986), to conclude that intervenors have a First Amendment right of access to the classified videos. *Press-Enterprise*, however, governs whether the First Amendment requires a public right of access to certain unclassified records and proceedings in a criminal trial. That case has no relevance to the issue



SECRET

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



presented here: whether a court may disregard the Executive Branch's determination that public disclosure of classified material will harm national security. Moreover, by applying *Press-Enterprise* here, the district court required the Government to carry a "heavy burden" and demonstrate a "substantial probability" of harm to an "overriding interest" in order to protect the information at issue, which is a more demanding standard than the well-established standard for classifying information.

Even assuming the *Press-Enterprise* standard were applicable, the district court erred in finding a First Amendment right here. First, there is no history of access to classified information such as that at issue here. The district court incorrectly based its decision on precedents acknowledging a history of access only to *unclassified* records. Second, the court erred in holding that public access to the videos would play a significant positive role in these now-concluded habeas proceedings.

But even if *Press-Enterprise* (or a similar standard) applies to classified materials *and* a First Amendment right could attach here, the Government's declarations demonstrate a substantial probability of harm to national





UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
SECRET

security sufficient to overcome any such First Amendment right. As senior military officials explained, the videos could likely be used as propaganda by extremists and terrorist groups to incite anti-American sentiment and violence, thereby increasing the risk to U.S. service members. In addition, public disclosure of the videos could enable detainees to develop countermeasures to cell extraction procedures, thereby endangering the guards at Guantanamo, as well as the overall security of the detention facility. These officials likewise explained that release of these videos could encourage detainees to force more cell extractions, which would increase the risk of injury to both detainees and military personnel at Guantanamo.

Instead of deferring to the Government's assessments and predictions of harms, the district court erroneously substituted its own inexpert judgments to conclude that there was no substantial probability of harm, and ordered disclosure of classified information. Its judgment should be reversed.


SECRET
UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



## STANDARD OF REVIEW

This Court reviews *de novo* the legal question of whether the First Amendment provides a right of access to the classified videos at issue. *See United States* v. *El-Sayegh*, 131 F.3d 158, 160 (D.C. Cir. 1997).

## ARGUMENT

THE DISTRICT COURT ERRED IN ORDERING PUBLIC RELEASE OF THE CLASSIFIED GOVERNMENT VIDEOS, THE RELEASE OF WHICH IS REASONABLY LIKELY TO CAUSE SERIOUS DAMAGE TO NATIONAL SECURITY.

### A. The District Court Erred in Concluding That the Public Has a First Amendment Right of Access to Classified Material in Civil Litigation.

#### 1. *The* Press-Enterprise *Standard Applicable to the Sealing of Unclassified Judicial Records Has No Application to Review of Executive Classification Decisions.*

The Constitution "is neither a Freedom of Information Act nor an Official Secrets Act." *Houchins* v. *KQED, Inc.*, 438 U.S. 1, 14 (1978) (plurality opinion). Where a party seeks public disclosure of classified Government information, Congress has provided a mechanism under the FOIA for reviewing whether the material is "properly classified" and therefore may be appropriately withheld. *See, e.g., Center for Int'l Envtl. Law* v. *Office of the U.S. Trade Representative*, 718 F.3d 899, 903-04 (D.C. Cir. 2013). And in other





UNCLASSIFIED//FOR PUBLIC RELEASE



contexts as well, a court's review generally is limited to whether the material at issue is properly classified. *See, e.g., Stillman* v. *CIA*, 319 F.3d 546, 548 (D.C. Cir. 2003) ("If the Government classified the information properly, then Stillman simply has no first amendment right to publish it."); *McGehee* v. *Casey*, 718 F.2d 1137, 1150 (D.C. Cir. 1983) (stating that in a case involving "a strong first amendment interest," the court's role was limited to "merely determining that the CIA properly classified the deleted items").

In FOIA and in other contexts, any review of Executive Branch classification decisions is exceedingly deferential. That stems from the recognition that the Executive Branch is vested with the "authority to classify and control access to information bearing on national security," based on the President's constitutional role as the head of the Executive Branch and as Commander-in-Chief. *Department of the Navy* v. *Egan*, 484 U.S. 518, 527 (1988). Courts therefore routinely defer to Executive Branch decisions relating to classified information in a variety of contexts. *See, e.g.*,





UNCLASSIFIED//FOR PUBLIC RELEASE



*Egan*, 484 U.S. at 529-30 (court cannot review the Executive's decision to deny or revoke a security clearance).[6]

The deference that courts give to the Executive regarding access to classified information is not only rooted in the constitutional role of the President, but also rests on practical concerns: "the Executive and the intelligence agencies under his control occupy a position superior to that of the courts in evaluating the consequences of a release of sensitive information." *El-Masri* v. *United States*, 479 F.3d 296, 305 (4th Cir. 2007). As *Egan* instructed, "[p]redictive judgment[s] [as to national security risks] must be made by those with the necessary expertise in protecting classified information. . . . [T]he protection of classified information must be

[6] *See also Bismullah* v. *Gates*, 501 F.3d 178, 187-88 (D.C. Cir. 2007) ("[I]t is within the role of the executive to acquire and exercise the expertise of protecting national security. It is not within the role of the courts to second-guess executive judgments made in furtherance of that branch's proper role."); *McGehee* v. *Casey*, 718 F.2d 1137, 1148-49 (D.C. Cir. 1983) (reviewing classification decision *de novo* in pre-publication review case involving writings of former CIA officer where First Amendment right was at stake, but "giving deference" where agency's "reasons for classification are rational and plausible"); *United States* v. *Smith*, 750 F.2d 1215, 1217 (4th Cir. 1984) ("[T]he government . . . may determine what information is classified. . . . A court cannot question it.").





UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it." 484 U.S. at 529; *see also McGehee* v. *Casey*, 718 F.2d 1137, 1149 (D.C. Cir. 1983) ("[J]udicial review of [agency] classification decisions, by reasonable necessity, cannot second-guess [agency] judgments on matters in which the judiciary lacks the requisite expertise."); *CIA* v. *Sims*, 471 U.S. 159, 176-80 (1985).

In Freedom of Information Act ("FOIA") cases, for example, where the Government seeks to withhold classified information, "an agency must show both that the information was classified pursuant to the proper procedures, and that the withheld information meets the standard for classification." *Int'l Counsel Bureau* v. *U.S. Dep't of Def.*, 906 F. Supp. 2d 1, 4 (D.D.C. 2012). This Court has made clear that "the text of Exemption 1 itself suggests that little proof or explanation is required beyond a plausible assertion that information is properly classified." *Morley* v. *CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007). Declarations submitted in support of



SECRET

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



withholding classified information "merit 'substantial weight.'" *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998).

Thus, when the Government provides declarations that establish "plausible explanations of the harm to national security from the release of even solo images of a detainee, and explanations for why the [FCE] videos were appropriately classified in their entirety," the Court must accept those statements at face value and allow the exemption. *Int'l Counsel Bureau*, 906 F. Supp. 2d at 6 (affirming withholding of FCE videos under Exemption 1); *see also Center for Constitutional Rights* v. *CIA*, 765 F.3d 161, 167-68 (2d Cir. 2014) (deferring to government declarations explaining that photos and a cell extraction video of a Guantanamo detainee were properly classified).

Here, the Executive Branch appropriately exercised its classification authority to protect from disclosure cell extraction videos, and demonstrated to the district court, based on the considered judgment of high-ranking military officers with extensive knowledge of the potential danger to national security, that public release could reasonably be expected to cause serious damage to national security. But the district



SECRET

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



court did not purport to review the Executive Branch's classification determination, much less review it deferentially. Indeed, the court expressly declined to do so, deeming the classification of the information to be irrelevant to whether a qualified First Amendment right existed. App. 181, 183. That holding was incorrect.

Instead of looking to analogous contexts concerning the Executive Branch's authority to classify national security information and the deference owed to such determinations, the district court focused on case law concerning the courts' authority to seal *unclassified* judicial proceedings and records, and First Amendment limitations on *that* authority. App. 178-82 (citing, *inter alia*, *Press-Enterprise Co.* v. *Superior Court*, 478 U.S. 1, 8-9 (1986)). Those cases recognize that the judiciary's authority to seal unclassified proceedings or records is limited when there is a qualified First Amendment right of public access. *See, e.g.*; *Press-Enterprise*, 478 U.S. at 8-9.

Those cases, however, do not apply here to justify the unsealing of *classified* information, when the Executive Branch has already determined



SECRET

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
SECRET

that disclosure of the information at issue would reasonably be expected to cause serious damage to national security. The disclosure of classified information by a court presents an entirely different issue: whether a court may disregard the Executive Branch's determination that disclosure will harm national security. Nothing in the precedents cited by the district court supports the proposition that the judiciary has discretion to unseal properly classified Government records.

If the district court were correct that the precedents concerning unclassified judicial records apply here, the well-established standard governing review of Executive Branch classification determinations would be fundamentally altered. In place of the familiar standard in which the Government provides only a logical and plausible explanation that the information "reasonably could be expected" to cause serious damage to national security to support its classification decision, Exec. Order No. 13,526, § 1.2, 75 Fed. Reg. 707, 707-08 (Dec. 29, 2009); *Judicial Watch, Inc.* v. *U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013), the district court's First Amendment standard would impose a "heavy burden" and presume a


SECRET
UNCLASSIFIED//FOR PUBLIC RELEASE

right of access unless the Government demonstrates a "substantial probability" of harm to an "overriding interest."

That the information at issue here involves judicial records, that is, Executive Branch materials ordered disclosed to security-cleared counsel for use in the habeas litigation and that were admitted into evidence and presented to the district court during the preliminary injunction hearing, does not justify such a sea change in the protections given to properly classified information. To begin, the Supreme Court has unequivocally held that the First Amendment does not provide for access to government proceedings and records (such as the videos filed by Dhiab in the judicial proceedings below). *See Houchins*, 438 U.S. at 15 (the First Amendment does not "mandate[] a right of access to government information or sources of information within the government's control"); *McBurney* v. *Young*, 133 S. Ct. 1709, 1718 (2013) ("there is no constitutional right to obtain all the information provided by FOIA laws").[7]

[7] *See also McGehee*, 718 F.2d at 1147 ("As a general rule, citizens have no first amendment right of access to traditionally nonpublic government

*Continued on next page.*





UNCLASSIFIED//FOR PUBLIC RELEASE
SECRET

Yet, if the district court's approach here is sanctioned, that is precisely what will occur; the Government would need to demonstrate a "substantial probability" of harm in order to protect the classified information from public disclosure. Such a standard could lead to a variety of improper and/or inconsistent results. Foremost, such a standard does not properly account for (nor give the appropriate deference to) the national security judgments of the Executive Branch, as discussed above. *Egan*, 484 U.S. at 529; *McGehee*, 718 F.2d at 1149; *El-Masri*, 479 F.3d at 305.

Further, the district court's approach potentially would lead to anomalous results. Under the district court's approach, if the Government responds to a court order and submits classified information for *in camera*

---

information."); *Center for Nat'l Sec. Studies* v. *U.S. Dep't of Justice*, 331 F.3d 918, 934 (D.C. Cir. 2003) (no First Amendment right to disclosure of government investigatory documents regarding when and where Guantanamo detainees were arrested); *North Jersey Media Grp., Inc.* v. *Ashcroft*, 308 F.3d 198, 209 (3d Cir. 2002) ("[T]here is no general right of public access to governmental proceedings or information.").


SECRET
UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



review in a FOIA case,[8] a First Amendment right of access attaches, which would effectively require the Government then to demonstrate a "substantial probability" of harm to justify withholding of otherwise exempt material. Such a result would undermine the FOIA statutory scheme.

Indeed, it is clear that intervenors would have no right under FOIA to access the videos at issue here, which they have not disputed are properly classified. *See* 5 U.S.C. § 552(b)(1); *Int'l Counsel Bureau*, 906 F. Supp. 2d at 5-8. Similarly, Dhiab's counsel, who have access to the classified videos by virtue of having been granted a security clearance, would not have a First Amendment right to publicly release the properly classified videos under this Court's pre-publication review line of cases. *See Stillman* v. *CIA*, 319 F.3d 546, 548 (D.C. Cir. 2003). A different result should not obtain simply because the videos were then filed with the court for use in litigation.

---

[8] FOIA permits courts to conduct *in camera* review of agency records withheld pursuant to that statute. *See* 5 U.S.C. § 552(a)(4)(B); *ACLU* v. *U.S. Dep't of Def.*, 628 F.3d 612, 626-27 (D.C. Cir. 2011).





UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



The First Amendment, therefore, cannot be construed to extend a right of access to information that has been properly classified by the Executive Branch merely because it has been filed in court. Such a broad interpretation would permit the judiciary to nullify an Executive Branch classification decision simply by ordering a classified document to be filed in court.

Indeed, in the context of the Guantanamo habeas litigation itself, application of the district court's approach promises years of litigation, burdensome for both the Executive Branch and the courts, over public disclosure of the large volume of classified information used in those cases. For more than ten years in the Guantanamo Bay habeas litigation, the Government has taken the extraordinary step of providing security-cleared counsel for detainees and the courts with a substantial amount of classified information in several hundred cases, much of which has been placed into the courts' record without objection from the Government, in order to ensure that detainees receive meaningful review of their habeas claims. In doing so, the Government has reasonably relied on the traditional litigation



SECRET

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



safeguards to protect classified information from public disclosure, including entry of an appropriate protective order, which permits detainees to present their detention-related claims using that information in a secure setting and filing such information under seal, as was the case with Dhiab's use of the videos here.

The district court, in denying reconsideration, attempted to justify its application of *Press-Enterprise* by stating that no court has denied a First Amendment right to "public disclosure of images of any kind, depicting detainees being forcibly removed from their cells and forcibly fed against their will." App. 273. In so doing, the district court recognized that another district court had declined to order public disclosure of cell extraction videos under FOIA. *See Int'l Counsel Bureau*, 906 F. Supp. 1 (FCE videos properly withheld under FOIA Exemption 1). The district court distinguished that case on the ground that FOIA provides "a significantly more lenient standard for denying release of records than the First Amendment." App. 273 n.2. But the district court provided no explanation as to why information that is properly classified, and which



SECRET

UNCLASSIFIED//FOR PUBLIC RELEASE



warrants protection in a FOIA case, may be disclosed in a First Amendment case. Nor did the district court explain why the familiar, deferential standard that applies to classified information in the FOIA and pre-publication review contexts is inapplicable when classified information is filed under seal in a court proceeding by another party.

The cases relied upon by the district court concerning the judiciary's authority to seal unclassified judicial records do not save the district court's rationale. *See* App. 176-78 (*citing Ameziane*; *Bismullah* v. *Gates*, 501 F.3d 178 (D.C. Cir. 2007); and *Parhat* v. *Gates*, 532 F.3d 834 (D.C. Cir. 2008)); App. 181-82 (*citing Bismullah*, 501 F.3d at 188; *In re Washington Post Co.*, 807 F.2d 383, 391-92 (4th Cir. 1986)). Those cases do not establish that the judiciary has authority to unseal *classified* records. Indeed, *Bismullah*, distinguished between classified documents used in the detention-related proceeding in that case, which this Court concluded could be withheld even from security-cleared counsel in the case, from unclassified information, for which the Court clarified that the Government had to seek the Court's authority to protect. 501 F.3d at 187-89; *see also Parhat*, 532 F.3d at 852-53;





UNCLASSIFIED//FOR PUBLIC RELEASE



*Ameziane*, 699 F.3d at 494-95. Authority to seal unclassified documents simply cannot confer on the judiciary the authority to disregard an Executive Branch classification decision and publicly disclose properly classified information filed in judicial proceedings; as explained above, the issues are decidedly distinct. *Bismullah*, 501 F.3d at 187-88 ("It is not within the role of the courts to second-guess executive judgments made in furtherance of that branch's proper role.").

And although the Fourth Circuit held in *In re Washington Post* that, in the context of a criminal case, the Government must justify closure when there is a First Amendment right of access, the court did not analyze whether proper classification was sufficient to overcome a First Amendment right and justify closure, much less order disclosure of the classified documents at issue in that matter. *In re Washington Post*, 807 F.2d at 390-92. Indeed, the Fourth Circuit held in a subsequent case that there was no right of access to classified information filed with the court and expressly declined to "review, and perhaps reject, classification decisions



SECRET

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
SECRET

made by the executive branch." *United States* v. *Moussaoui*, 65 Fed. App'x 881, 887 & n.5 (4th Cir. 2003).

2. *Even if the District Court Were Correct That* Press-Enterprise *is Applicable, No First Amendment Right Attaches Here.*

Pursuant to *Press-Enterprise*, a First Amendment right of access attaches to certain judicial records and proceedings in criminal cases when: (1) there is a history of public access to the particular proceeding, and (2) public access plays a significant positive role in the functioning of the particular proceeding—the so-called "experience and logic" test. *Press-Enterprise*, 478 U.S. at 8-9. Neither the Supreme Court nor this Court, however, has extended such a right of access to civil proceedings. *See Center for Nat'l Sec. Studies* v. *U.S. Dep't of Justice*, 331 F.3d 918, 934-35 (D.C. Cir. 2003) ("The narrow First Amendment right of access to information recognized in *Richmond Newspapers* does not extend to non-judicial documents that are not part of a criminal trial."). Nor did *Press-Enterprise* concern properly classified information, as explained above.



UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

SECRET

Even under the *Press-Enterprise* test, however, the public disclosure ordered here was wrong. Not only is there no history of public access to *classified* information in habeas proceedings, but there is no basis to conclude that such public access would play a significant role in the functioning of the (now moot) underlying habeas proceeding.

a. There Is No History of Public Access to Classified Information Filed in Habeas Proceedings.

In determining whether a history of public access exists, a court must make a determination not for an entire case, but rather about each specific proceeding within the case and the type of information involved. *See Press-Enterprise*, 478 U.S. at 10 (finding "tradition of accessibility to preliminary hearings" that were "conducted before neutral and detached magistrates").[9]

[9] *See also Times Mirror Co.* v. *United States*, 873 F.2d 1210, 1213-14 (9th Cir. 1989) (no history of public access to search warrant proceedings and materials); *United States* v. *Wolfson*, 55 F.3d 58, 60 (2d Cir. 1995) (right of access examined for "a particular stage of the proceeding or to a given class of documents"); *In re Washington Post*, 807 F.2d at 389 (experience and logic test applies to "a particular kind of hearing"); *compare Washington Post* v. *Robinson*, 935 F.2d 282, 288 (D.C. Cir. 1991) (First Amendment right of access to a consummated plea agreement), *with United States* v. *El-Sayegh*,

*Continued on next page.*





UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
SECRET

The district court mistakenly concluded that the first prong of the "experience and logic" test counsels in favor of a First Amendment right here. The district court found, based on the analysis in *In re Guantanamo Bay Detainee Litigation* (*Detainee Litigation I*), 624 F. Supp. 2d 27 (D.D.C. 2009), that access to habeas proceedings has been available historically,[10] App. 179 (citing *Detainee Litigation I*, 624 F. Supp. 2d at 35), and concluded that the fact that the habeas proceedings here involve classified information was irrelevant, App. 181 ("Courts must consider the history and virtues of access to particular *proceedings*, not the information that may arise during those proceedings.").

---

131 F.3d 158, 160-61 (D.C. Cir. 1997) (no First Amendment right of access to unconsummated plea agreement). *See also United States* v. *Poindexter*, 732 F. Supp. 165, 167-68 (D.D.C. 1990) (no historical access in criminal case to pretrial depositions of a former president involving classified information).

[10] The propriety of that conclusion is questionable, given the district court's acknowledgment in *Detainee Litigation I* that "the case law is bereft of analysis regarding whether public access to habeas proceedings has historically been available." *See* 624 F. Supp. 2d at 35. The court in *Detainee Litigation I* instead relied on a history of access to civil proceedings generally. *Id.* at 36. But as the case law makes clear, courts are to address the specific type of proceeding and information at issue.




UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
SECRET

The district court in *Detainee Litigation I*, however, found only "a limited right to access the *unclassified* factual returns in these habeas proceedings." 624 F. Supp. 2d at 38 (emphasis added). The court did not hold that there was a tradition of access to every aspect or every type of information in the habeas proceedings, and it did not rule that there was a history of access to classified information in habeas cases.

Moreover, the district court's conclusion that the nature of the information at issue is irrelevant to the "experience and logic" test is inconsistent with the case law, in which courts examine not only the type of proceeding (*i.e.*, civil or criminal) and the stage of the proceeding (*i.e.*, pre-trial, trial, or post-trial), but also the particular materials at issue. *See, e.g.*, *SEC* v. *Am. Int'l. Grp.*, 712 F.3d 1, 5 (D.C. Cir. 2013) (even assuming First Amendment applied to civil proceedings at issue, the independent consultant reports were not part of those proceedings, nor were they judicial records); *In re Application of New York Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401, 410-11 (2d Cir. 2009) (no right of access to sealed wiretap applications). And the Government is not aware


SECRET
UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
SECRET

of any case, in any type of proceeding, in which a court has concluded that there is a First Amendment right of public access to classified information.[11]

Indeed, this Court has generally recognized the appropriateness of the non-public filing of classified information. *See, e.g., Bismullah*, 501 F.3d at 194-204 (providing for non-public filing of classified information through the Court Security Officer and prohibiting disclosure of classified information to unauthorized persons), *judgment vacated*, 554 U.S. 913 (2008), *and on reconsideration*, 551 F.3d 1068 (D.C. Cir. 2009); *Northrop Corp.* v. *McDonnell Douglas Corp.*, 751 F.2d 395, 401 (D.C. Cir. 1984) (protective order sealing classified information).

This Court has likewise recognized the propriety of denying access to classified material in litigation even when access is being sought by a party

[11] Several courts have denied motions for public disclosure of classified information that was filed in judicial proceedings. *See, e.g., United States* v. *Abu Marzook*, 412 F. Supp. 2d 913, 925 (N.D. Ill. 2013); *Al-Haramain Islamic Foundation, Inc.* v. *Bush*, 451 F. Supp. 2d 1215, 1232 (D. Or. 2006); *United States* v. *Poindexter*, 732 F. Supp. 165, 167 (D.D.C. 1990); *In re Motion for Release of Court Records*, 526 F. Supp. 2d 484, 491-97 (F.I.S.C. 2007).



UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

SECRET

to the suit. *See, e.g., Holy Land Found. for Relief & Dev.* v. *Ashcroft*, 333 F.3d 156, 164 (D.C. Cir. 2003); *People's Mojahedin Org. of Iran* v. *Dep't of State*, 327 F.3d 1238, 1242 (D.C. Cir. 2003); *Jifry* v. *FAA*, 370 F.3d 1174, 1182 (D.C. Cir. 2004); *Bismullah*, 501 F.3d at 198 (permitting the Government to withhold "highly sensitive [classified] information" from security-cleared opposing counsel in Guantanamo Bay litigation and to submit such information to the court *ex parte* and *in camera*).

Given that the Executive can deny access by private litigants and their counsel to classified information that bears on their claims, it follows that withholding access from members of the public, such as the non-party news organizations here, does not violate a First Amendment right of access to judicial records.

The Classified Information Procedures Act, 18 U.S.C. app. 3, which requires that pre-trial hearings involving classified evidence in criminal trials be held *in camera*, is further evidence that there is no history of public access to classified information entered in court proceedings. *United States* v. *Poindexter*, 732 F. Supp. 165, 167 (D.D.C. 1990).





UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



Accordingly, there is a long history and tradition of courts protecting classified information from disclosure, which definitively refutes any claim of a history and tradition of compelled public access to classified information in habeas proceedings. Intervenors, therefore, cannot prevail on the first prong of the *Press-Enterprise* analysis.

The district court reasoned that the Government's interpretation of *Press-Enterprise* "would displace the Court's power to seal its own record." App. 181. Not so. Courts alone have the power to seal unclassified judicial records under *Press-Enterprise*, subject to First Amendment limitations. But *Press-Enterprise* is simply inapplicable where, as here, the Government demonstrated to a court that the information is properly classified. Unlike unclassified documents, which are public unless the court takes affirmative action to seal them, classified documents are not presumed to be public. A court may review whether such documents are properly classified, giving appropriate deference to the Executive Branch's judgment. But once the Government has demonstrated that the documents are properly classified, a court cannot publicly disclose those documents.





UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

SECRET

b. Public Access to Classified Information Would Not Play a Significant Positive Role in These Proceedings.

Under the second prong of the "experience and logic" test, the court "consider[s] whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise*, 478 U.S. at 8. *See also In re Washington Post*, 807 F.2d at 389; *North Jersey Media Group, Inc.* v. *Ashcroft*, 308 F.3d 198, 217 (3d Cir. 2002). Here, public access to the classified videos cannot play any role in these proceedings, given that the underlying habeas proceedings are moot.

In concluding to the contrary, albeit prior to the mooting of the case (although the district court later declined to reconsider), the district court relied solely on *Detainee Litigation I*, in which a district court held that public access to *unclassified* factual returns would play a significant role in the ongoing habeas proceedings. App. 179-80; *Detainee Litigation I*, 624 F. Supp. 2d at 36-37 ("opening the judicial process ensures actual fairness as well as the appearance of fairness"); *Detainee Litigation I*, 624 F. Supp. 2d at 37 (factual returns are "fundamental" to habeas proceedings); *id.* (disclosure "would facilitate third-party assistance for petitioners" and






UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



government's "detention decisions would gain the legitimacy that accompanies transparency").

But the factual returns the court discussed in *Detainee Litigation I* were unclassified materials; *Detainee Litigation I* therefore provides no support for the district court's holding here that public access to classified information would aid these now moot habeas proceedings. To the contrary, even in the context of ongoing litigation, *Detainee Litigation I* appropriately concluded that "any positive role would be severely diminished if the public gains access to classified information." 624 F. Supp. 2d at 37. In making that finding, *Detainee Litigation I* expressly declined to "question, generally, government determinations that providing classified information to the public would cause serious damage to national security." *Id.*

Indeed, the media intervenors make clear that they want the information not to shed light on the judicial process, but to monitor the actions of the *Executive Branch*. *See, e.g.*, Memo. in Support of Mot. to Unseal Videotapes, No. 05-cv-1457, Docket No. 263-1 at 32-33 (D.D.C. June



SECRET

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
SECRET

20, 2014) ("public has a substantial interest in evidence documenting the Government's response to the detainees' hunger strike"). That interest, however, does not fall within the ambit of the First Amendment right of access to judicial proceedings and records, which is to facilitate monitoring of judicial or prosecutorial misconduct. *See United States* v. *El-Sayegh*, 131 F.3d 158, 161 (D.C. Cir. 1997) (First Amendment right of access "as a means of assuring public monitoring of judicial or prosecutorial misconduct"); *id.* at 163 (when a party seeks information to "evaluat[e] the performance of" the Government "in [its] dealings with" an individual, the party is not evaluating "the judicial function," and the "appropriate device" for obtaining the information is not a request for "access to the records of the judiciary" but "a [FOIA] request addressed to the relevant agency"); *SEC*, 712 F.3d at 5 (documents sought under First Amendment theory must have "bearing on monitoring judicial conduct").


SECRET
UNCLASSIFIED//FOR PUBLIC RELEASE



**B. Even Assuming a Limited First Amendment Right of Access Applied Here, the Government Demonstrated That Closure Was Necessary to Protect National Security, Even After the Videos Were Redacted.**

Even if the district court were correct that there is a First Amendment right of access to the classified videos under *Press-Enterprise*, federal courts may nevertheless seal those proceedings or records if there is a "substantial probability" of an "overriding interest based on findings that closure is essential to preserve higher values." *Press-Enterprise*, 478 U.S. at 9, 14. The Government, supported by several rounds of declarations from high-ranking military officers, identified and explained in detail concrete harms to national security that are reasonably expected to flow from disclosure of the cell extraction videos, even after being redacted. As explained below, those harms are more than sufficient to demonstrate a compelling interest for maintaining the videos under seal. *See United States* v. *Moussaoui*, 65 F. App'x 881, 887 (4th Cir. 2003) (Government has a compelling interest in protecting classified information); *Snepp* v. *United States*, 444 U.S. 507, 509 n.3 (1980) ("The Government has a compelling interest in protecting . . . the secrecy of information important to our national security.").

UNCLASSIFIED//FOR PUBLIC RELEASE
SECRET

The district court discounted the Government's assessments of harm to national security as "vague, speculative, . . . or . . . implausible." App. 185; *see also* App. 274. In so doing, the district court improperly substituted its own judgment about the likelihood of harm to national security for that of the Executive Branch. That is reversible error. *See, e.g., Fitzgibbon* v. *CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990) (faulting district court for "essentially perform[ing] its own calculus as to whether or not harm to the national security. . . would result from disclosure").

As courts have frequently acknowledged, judges are ill-equipped to evaluate the harm likely to result from the release of national security information. *See, e.g., El-Masri*, 479 F.3d at 305 ("[T]he Executive and the intelligence agencies under his control occupy a position superior to that of the courts in evaluating the consequences of a release of sensitive information."); *Egan*, 484 U.S. at 529 ("Predictive judgment [as to national security risks] must be made by those with the necessary expertise in protecting classified information. . . . [T]he protection of classified information must be committed to the broad discretion of the agency



UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
SECRET

responsible."); *McGehee*, 718 F.2d at 1149 ("judiciary lacks the requisite expertise" to review classification decisions).

### 1. *The Videos Can Be Used to Incite Violence Against U.S. Personnel and Interests.*

As the Government explained to the district court, if the videos are released they could be used to increase anti-American sentiment and inflame Muslim sensitivities overseas, thereby placing the lives of U.S. service members and U.S. citizens overseas at increased risk. App. 144, 214-18; *see also Center for Constitutional Rights*, 765 F.3d at 168 (concluding that the release of photos and videos of a Guantanamo detainee "could be exploited by extremist groups as tools to recruit or to incite violence" and may prove "more effective as propaganda" than previously released, written records); *Guantanamo Detention Facility and the Future of U.S. Detention Policy: Hearing Before S. Comm. on Armed Services*, 114th Cong. 5-6 (2015) (statement of Brian P. McKeon, Principal Deputy Undersecretary of Defense for Policy) (discussing how extremist groups use Guantanamo to incite violence and citing examples of ISIS executions in which victims


SECRET
UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



were clothed in orange jumpsuits "believed by many to be the symbol of the Guantanamo Detention Facility").

In the recent past, the release of certain inflammatory photographs or information has resulted in anti-American violence, including the deaths of four U.S. soldiers. App. 214-15. For example, in 2012, media reports about the burning of Korans "sparked weeks of riots, resulting in the deaths of four American soldiers and approximately 40 reported civilian deaths." App. 214. Also in 2012, the release of a video depicting U.S. Marines urinating on corpses of alleged Taliban members "was used as a recruitment tool for the Taliban and led to an Afghan soldier attacking and killing French troops." *Id.* Although the videos at issue here do not depict improper treatment of detainees, but rather "the lawful, humane, and appropriate interaction between guards and detainees," persons and entities hostile to the U.S. and its operation of the Guantanamo detention facility "are likely to think otherwise." App. 215; *see also* App. 219 (videos "show a detainee in a situation in which JTF-GTMO personnel are required to take action that includes physically handling the detainee, bodily





UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



moving him from one place to another, restraining him, and facilitating a medical procedure not commonly viewed by the general public"). As both Rear Admirals Harris and Lewis explained, there is good reason to believe, therefore, that release of the cell extraction videos could prompt a similar reaction that would endanger U.S. personnel and threaten national security. App. 215, 265-67.

This risk is particularly acute to U.S. personnel in Afghanistan and Iraq, where "[t]he subject of U.S. detainee operations remains extremely sensitive," App. 218, and where [REDACTED] U.S. citizens are on the ground. App. 266. Moreover, terrorist groups such as ISIL and Al Qaeda have in the past used the topic of Guantanamo in propaganda to recruit members and encourage attacks on the United States or its allies. App. 215-18, 265-66. Based on that history, it is likely that these particular videos would be seized upon by ISIL and Al Qaeda to incite others to violent action. *Id.*

And, as the Government explained, this risk of harm to national security remains heightened. App. 265. Specifically, Rear Admiral Lewis





UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
SECRET

noted that ISIL "continues to threaten the United States." App. 265-66 (citing ISIL's recent propaganda video using imagery of the September 11, 2001 attacks). Based on his experience and judgment, he agreed with Rear Admiral Harris' assessment that the cell extraction videos, even once redacted, "would be especially useful to a group like ISIL which utilizes social media particularly effectively to incite violence, motivate supporters, and obtain new recruits." App. 266.

The district court, however, rejected the Government's argument as a matter of law. App. 192. The district court did not question the Government's judgment about the harm that could flow from such propaganda materials; instead, the district court concluded that seeking to prevent terrorist propaganda was not legally sufficient to defeat a First Amendment right, likening nondisclosure to a heckler's veto. *Id.* (citing *Brown v. Louisiana*, 383 U.S. 131, 133 n.1 (1966)). That was error.

The district court cited no authority for applying the heckler's veto concept to either the qualified First Amendment right of public access or assessments of the dangers of publicly disclosing classified information.



UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



And at least one court has recognized that the potential use of FCE videos as propaganda is a legitimate harm that supports their withholding under FOIA Exemption 1. *See Int'l Counsel Bureau*, 906 F. Supp. 2d at 6 (citing the potential "manipulat[ion] and/or use[] as a propaganda tool" as one of the "particular harms and dangers to national security from disclosure" of FCE videos); *Center for Constitutional Rights*, 765 F.3d at 168 (concluding that the release of images of one detainee, "even images that do not depict abuse or mistreatment—could be exploited by extremist groups as tools to recruit or to incite violence"); *Judicial Watch, Inc.* v. *U.S. Dep't of Def.*, 715 F.3d 937 (D.C. Cir. 2013) (refusing to apply heckler's veto line of cases to force disclosure of Government images of Osama bin Laden).

In addition, the district court misunderstood the Government's argument on this point. The Government does not oppose release of the videos simply because release may spur terrorist propaganda, but rather because they are likely to be used by terrorist groups to expand their ranks and to encourage attacks on U.S. personnel, thereby increasing the risk to U.S. personnel overseas, who are often the target of their attacks. Risk to





UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



U.S. personnel is surely a cognizable threat to national security that the Department of Defense (and this Court) can take into account when deciding that it is appropriate, and even necessary, to prevent disclosure of the cell extraction videos.

Moreover, in denying reconsideration, the district court erroneously minimized the Government's concern about use of the cell extraction videos as propaganda, citing testimony that our enemies "don't need Guantanamo Bay to hate us." App. 275 n.5. The fact that our enemies have other propaganda tools available to them, however, does not mean that the United States must provide them with more fodder.

### 2. *The Videos Could Be Used to Develop Countermeasures, Endangering Guantanamo Security.*

The Government further explained in its declarations that disclosing the videos poses a risk to military personnel because such disclosure would enable detainees and other enemies to develop countermeasures to cell extraction tactics, techniques, and procedures. App. 140.



SECRET

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

SECRET

The cell extraction videos depict in detail the specific procedures and security precautions that are used in forced cell extractions. *See* Class. App. 17, 20-22, 31-32. Although detainees subject to cell extractions are able to observe some of those procedures, they are unable to observe them all, particularly given the speed with which a cell extraction occurs and the fact that the detainee's view of what is taking place around him is limited, based on his positioning and the position of the Guantanamo personnel. Class. App. 17-18, 20, 31-32. Releasing the cell extraction videos, therefore, would provide detainees (or others) with specific information about cell extraction procedures that has not actually been available even to those detainees who have been the subject of forced cell extractions; information that could be used to thwart those procedures. *See* Class. App. 18.

Detainees in the past have made use of operational information gathered during their time in detention to try to disrupt camp procedures. App. 223.





UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

SECRET

Class. App. 19. A detainee hit a guard in the face with his fists and handcuffs, knocking the guard to the ground. While other guards restrained the detainee, another detainee scratched the face and eyes of the injured guard, drawing blood. Class. App. 19. The possibility that the release of cell extraction videos would enable detainees to devise cell extraction countermeasures increases the risk of injury to Guantanamo personnel and threatens the security of the Guantanamo detention facility. App. 221, 223-24, 227.

The district court discounted that risk, criticizing the Government for failing to provide actual evidence of past countermeasures developed by detainees. App. 275. But the Government is not required to provide *past* evidence of *predicted* future harm. *See, e.g., Halperin* v. *CIA*, 629 F.2d 144, 149 (D.C. Cir. 1980) ("a court must take into account . . . that any affidavit or other agency statement of threatened harm to national security will



SECRET

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
SECRET

always be speculative to some extent, in the sense that it describes a potential future harm rather than an actual past harm."). In any event, the district court erroneously dismissed the example cited above, which describes how detainees have used operational information to circumvent security measures in the past, as mere evidence that Guantanamo is "not a desirable assignment." App. 274.

The district court likewise rejected the Government's concern about countermeasures because it presumed that "the detainees subjected to forced-feeding are already intimately familiar with the enteral feeding process and facilities." App. 186. But the court's erroneous conclusion is not supported by precedent or fact. *See Zander* v. *DOJ*, 885 F. Supp. 2d 1, 6-8 (D.D.C. 2012) (withholding FCE video by Bureau of Prisons was proper under FOIA because public release would enable prisoners to learn agency's techniques, which could be used to thwart FCEs in the future and risk harm to agency officials).

As Rear Admiral Cozad and Brigadier General Monteagudo both explained, not all of the procedures depicted on the videos are observable



UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



by a detainee subject to a cell extraction or enteral feeding. App. 221; Class. App. 31-32. Moreover, cell extractions occur very quickly, and the placement of the detainee and Guantanamo personnel prevent the detainee from observing all the details of the cell extraction. A video recording would provide detainees (or others) with that specific, additional information and would allow them to use it to develop countermeasures to the cell extractions. Class. App. 17-18, 31-32. Moreover, given the number of videos that could be released here (ten videos have already been ordered disclosed; twenty-four videos remain at issue in the district court), a viewer could watch them all to identify patterns and mistakes in the procedures, which could be used to target any weaknesses or flaws in the procedures and/or their execution. Class. App. 22-23. Such information could then be passed on to detainees.

The district court in this case also rejected the Government's argument regarding countermeasures because it concluded that the same information in the videos had already been publicly released. *See, e.g.*, App. 186, 188, 189, 192 (Government has released information about





UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



enteral feeding and FCEs). This is incorrect; the record demonstrates that the information previously released to the public is not the same information at issue in the videos. App. 139, 151.

As the Government explained in the Cozad Declaration, any imagery of JTF-GTMO that has previously been released has undergone "an operational security review" "to ensure no classified information or sensitive information of concern from an operational security perspective is disclosed." App. 208. Specifically, the Government noted that the court had relied, in footnote 5 of its October 3, 2014 opinion, on several publicly released photos of the enteral feeding chair and/or the area where enteral feeding is administered. The Government explained, however, that "[t]he FCE videos in question contain significantly more information than previously released photos, which were static depictions of the items used for enteral feeding." *Id.* "For instance, the videos show enteral feeding of a detainee, to include the insertion and removal of the enteral feeding tube; the placement of personnel during that procedure; and the room in which





UNCLASSIFIED//FOR PUBLIC RELEASE



enteral feeding takes place; all images that have not been released previously." *Id.*

The Government further explained that the district court erred in relying on the public availability of certain Standard Operating Procedures and the Bureau of Prisons' procedures to conclude that release of the cell extraction videos would not disclose any new information. App. 209. The Standard Operating Procedures cited by the court are no longer in effect, and the Bureau of Prisons' procedures are not identical to those in use at GTMO. *Id.*

The district court, therefore, erred in concluding, contrary to the Government's declarations, that disclosure of the classified videos would not reveal any new detailed information, not already publicly available, which could facilitate the development of countermeasures. *See Int'l Counsel Bureau*, 906 F. Supp. 2d at 7-8 ("Here, there is no indication in the record that any portion of the FCE videos—which have been classified "SECRET"–were ever publicly released."); *see also Wolf* v. *CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) (to prevail on argument that information should be







released because it has already previously been disclosed, "the information requested must be as specific as the information previously released . . . [and] must match the information previously disclosed").

3. *Release of the Videos May Increase the Need for More Cell Extractions, Endangering Security at Guantanamo.*

The Government also explained that some detainees would likely respond to public release of cell extraction videos by behaving so as to require more frequent cell extractions that would be recorded and potentially released to the public, increasing the risk of injury to both detainees and military personnel at Guantanamo. App. 142.

As Rear Admiral Cozad explained, release of the cell extraction videos here will encourage the detainees, many of whom are aware of this case, case, to act disruptively to trigger forced cell extractions in the hope that their actions and/or words will be recorded and more broadly communicated. Class. App. 25-27. Detainees have repeatedly shown an interest in communicating with the outside world and/or with the media. Class. App. 26-27. More cell extractions will increase the risk of injury to





UNCLASSIFIED//FOR PUBLIC RELEASE



Guantanamo personnel and threaten the safety of the detention facility. App. 229-30.

The district court rejected this harm as speculative, reasoning that its order does not require all cell extraction videos to be released, but solely Dhiab's cell extraction videos. App. 193-94. But the fact that predictions of harm necessarily involve some level of uncertainty does not render them "speculative." And courts lack the expertise to evaluate the level of certainty and degree of harm posed by a particular risk. *See McGehee*, 718 F.2d at 1150 ("These risks identified in the CIA affidavits do not, of course, rise to the level of certainty, but we believe they are real and serious enough to justify the classification decision in this case."); *North Jersey Media Grp.*, 308 F.3d at 219 ("We are quite hesitant to conduct a judicial inquiry into the credibility of these security concerns, as national security is an area where courts have traditionally extended great deference to Executive expertise."). Moreover, at least one district court has accepted such a predicted harm to support withholding cell extraction videos under FOIA Exemption 1, even though the harm was "hypothetical." *Int'l*





UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



*Counsel Bureau*, 906 F. Supp. 2d at 7 (referring to predicted harm that release of videos would encourage detainees to act out, resulting in more videos, placing military members at greater risk and threatening foreign relations).

Moreover, as Rear Admiral Cozad explained, if the cell extraction videos are released here, detainees may believe that there is a possibility that other cell extraction videos will be released in the future. Class. App. 25-26. That possibility will incentivize detainees, who have shown an interest in communicating their actions and/or words with the outside world, to act disruptively to trigger forced cell extractions, so that their actions will be recorded and potentially released. Class. App. 26-27.

### 4. *Release of the Videos Would Risk Dilution of Protections Afforded U.S. Personnel in other Contexts.*

Release of the videos would also be contrary to the Government's commitment to a firm policy of protecting detainees from public curiosity and could affect the practice of other states in this regard, which would in turn dilute protections afforded U.S. service personnel in ongoing overseas





UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



contingency operations and future conflicts. JA 143. Dilution of these protections could significantly damage national security. *Id.; see Int'l Counsel Bureau*, 906 F. Supp. 2d at 6 (accepting Government's assertions of harms, including this same one, in concluding that FCE videos were properly classified and withheld under FOIA Exemption 1).

* * *

The Government's declarations, therefore, establish several compelling interests for maintaining the cell extraction videos under seal. It was error for the district court to discount those compelling interests. Even if the district court were correct in finding that not all of the Government's justifications were persuasive, the Government's declarations, on the whole, are nevertheless sufficient to demonstrate a compelling interest to keep the redacted videos under seal.

Indeed, this Court, in remanding the case to the district court, specifically noted that remand would give the court "an opportunity to consider the supplemental declarations that the government submitted in support of its motion for a stay." *Dhiab*, 787 F.3d at 567. This Court noted





UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



that those declarations "set out the harm associated with release of the videotapes in considerably more detail than the declarations the government submitted in opposition to the initial motion." *Id.* Yet the district court on reconsideration continued to rely on its own analysis of the potential risks of public disclosure and its own judgment as to whether those risks are worth taking. *See* App. 274-76. The district court's decision therefore must be reversed.



SECRET

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



## CONCLUSION

For the foregoing reasons, this Court should reverse the judgment below.

Respectfully submitted,

BENJAMIN C. MIZER
*Principal Deputy Assistant Attorney General*

CHANNING D. PHILLIPS
*United States Attorney*

MATTHEW M. COLLETTE
CATHERINE H. DORSEY
*(202) 514-3469*
*Attorneys, Appellate Staff*
*Civil Division, Room 7236*
*U.S. Department of Justice*
*950 Pennsylvania Ave., N.W.*
*Washington, D.C. 20530-0001*

FEBRUARY 2016





UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



## CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(A)

I hereby certify that that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Palatino Linotype, a proportionally spaced font.

I further certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,768 words, excluding the parts of the brief exempted under Rule 32(a)(7)(B)(iii), according to the count of Microsoft Word.

s/ Catherine H. Dorsey
CATHERINE H. DORSEY



UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



**CERTIFICATE OF SERVICE**

I hereby certify that on February 24, 2016, I filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by causing an original plus eight paper copies to be hand-delivered to the Court via the Court Security Officers and by causing two copies to be served on the following counsel via the Court Security Officers. Counsel for intervenors are not being served, because counsel are not cleared to receive classified information.

Eric L. Lewis
Lewis Baach PLLC
1899 Pennsylvania Ave., NW, Suite 600
Washington, DC 20006
(202) 833-8900

s/ Catherine H. Dorsey
CATHERINE H. DORSEY



UNCLASSIFIED//FOR PUBLIC RELEASE